**UNITED STATES DISTRICT COURT**
**WESTERN DISTRICT OF TEXAS**
**SAN ANTONIO DIVISION**

| | |
|---|---|
| LEONEL SOLIZ, Individually and For Others Similarly Situated, | **Case No. 5:24-cv-00515** |
| Plaintiff, | |
| v. | JURY TRIAL DEMANDED |
| SAN ANTONIO SECURITY AGENCY LLC, | COLLECTIVE ACTION PURSUANT TO 29 U.S.C. § 216(b) |
| Defendant. | |

**ORIGINAL COLLECTIVE ACTION COMPLAINT**

SUMMARY

1.      Plaintiff Leonel Soliz (Soliz) brings this lawsuit individually and on behalf of all current and former Security Guards who worked for San Antonio Security Agency LLC (San Antonio Security) and were paid straight time for overtime (Straight Time Workers). Soliz brings this action to recover unpaid overtime wages and other damages from San Antonio Security under the Fair Labor Standards Act (FLSA).

2.      This lawsuit includes a collective action pursuant to the FLSA, 29 U.S.C. §§ 201, *et. seq.*, to recover overtime wages.

3.      Soliz and the Straight Time Workers worked for San Antonio Security as Security Guards.

4.      Soliz and the Straight Time Workers regularly worked for San Antonio Security in excess of forty (40) hours each week.

5.      But San Antonio Security did not pay them overtime of at least one and one-half their regular rates for all hours worked in excess of forty (40) hours per workweek.

6.      Instead of paying overtime as required by the FLSA, San Antonio Security improperly classified Soliz and the Straight Time Workers as independent contractors ineligible for overtime, and paid them straight time for overtime. This practice violates the overtime requirements of the FLSA. *See* 29 U.S.C. § 201 *et. seq.*

7.      San Antonio Security's decision not to pay overtime compensation to Soliz and the Straight Time Workers was neither reasonable nor in good faith.

8.      Rather, San Antonio Security knowingly and deliberately failed to compensate Soliz and the Straight Time Workers overtime of at least one and one-half their regular rates for all hours worked in excess of forty (40) hours per workweek.

9.      Soliz and the Straight Time Workers therefore seek to recover all unpaid overtime and other damages owed under the FLSA as a collective action pursuant to 29 U.S.C. § 216(b).

## JURISDICTION AND VENUE

10.      This Court has original subject matter jurisdiction pursuant to 28 U.S.C. § 1331 and 29 U.S.C. § 216(b) because this action involves a federal question under the FLSA.

11.      This Court has personal jurisdiction over San Antonio Security because San Antonio Security is a resident entity of this District and is subject to the court's personal jurisdiction with respect to the civil action in question.

12.      Venue is proper in this Court pursuant to 28 U.S.C. § 1391 because a substantial part of the events or omissions giving rise to the claim occurred in this District.

## THE PARTIES

13.      Soliz worked for San Antonio Security from approximately September 2021 until September 2023 as a Security Guard in and around Corpus Christi, Texas.

14.      Throughout his employment, San Antonio Security paid Soliz straight time for overtime, including for hours worked over forty in a workweek (straight time for overtime pay plan).

15.     The relationship between Soliz and San Antonio Security rises to the level of an employee-employer relationship.

16.     Soliz's consent to be a party Soliz is attached as **Exhibit A**.

17.     Soliz brings this action on behalf of himself and all similarly situated Security Guards who were paid by San Antonio Security's straight time for overtime pay plan.  San Antonio Security classified these Security Guards as independent contractors, paid them a flat hourly rate for each hour worked, and failed to pay them overtime for all hours that they worked in excess of 40 hours in a workweek in violation of the FLSA.

18.     The FLSA Collective of similarly situated workers consists of:

**All individuals employed by or working on behalf of San Antonio Security and paid straight time for overtime in the past three (3) years (Straight Time Workers).**

19.     The identities of the Straight Time Workers can be readily ascertained from San Antonio Security's records.

20.     San Antonio Security is a company doing business throughout the United States.

21.     San Antonio Security is a San Antonio corporation, headquartered in Texas, and doing business in Texas, and may be served through its registered agent for service of process: **Republic Registered Agent LLC, 17350 State Hwy 249, Ste. 220, Houston, Texas 77064**.

ADDITIONAL FACTS

22.     San Antonio Security provides security services throughout Texas, including in Corpus Christi and San Antonio.

23.     To complete its business objectives, San Antonio Security hires personnel (like Soliz) to provide security guard services to its clients.

24.     For example, Soliz was hired by San Antonio Security to provide services for its clients in and around Corpus Christi, Texas.

25.     Soliz would provide security guard services for San Antonio Security's customers, including monitoring security on the customer's premises, responding to customer complaints, and checking identification of the customer's patrons.

26.     Throughout Soliz's employment with San Antonio Security, San Antonio Security improperly classified him as an independent contractor exempt from overtime.

27.     Throughout Soliz's employment with San Antonio Security, San Antonio Security paid him straight time for overtime, wherein Soliz received a flat hourly rate for each hour worked, regardless of how many hours he worked in a day or week.

28.     During his time with San Antonio Security, Soliz regularly worked 10 or more hours each day, and typically worked 45-50 hours each workweek.

29.     At no time during Soliz's employment with San Antonio Security did San Antonio Security pay him overtime compensation for hours worked in excess of forty (40) in a single week.

30.     Soliz is one of many Security Guards that San Antonio Security employed.

31.     Numerous Security Guards and those in similar roles whom San Antonio Security hired were classified by San Antonio Security as independent contractors and deemed ineligible for overtime compensation by San Antonio Security.

32.     San Antonio Security paid many of these employees straight time for overtime (without overtime pay).

33.     All such employees are subjected to the same or similar illegal pay practices for similar work.

34.     These workers make up the proposed collective of Straight Time Workers.

35.     During the relevant period, these Straight Time Workers were classified by San Antonio Security as independent contractors.

36.     During the relevant period, these Straight Time Workers worked for San Antonio Security on an hourly basis.

37.     During the relevant period, these Straight Time Workers were not paid overtime for the hours they worked for San Antonio Security in excess of 40 hours each week.

38.     While exact job titles and job duties may differ, San Antonio Security subjected the Straight Time Workers and other wellsite workers to the same or similar illegal pay practices for similar work.

39.     Soliz and the Straight Time Workers performed security services for San Antonio Security's customers, including bars, jewelers, and restaurants.

40.     The Straight Time Workers performed the same general job duties performed by Soliz. That is providing security services for San Antonio Security's customers.

41.     The Straight Time Workers worked the same or similar schedule worked by Soliz, regularly working more than 40 hours each week.

42.     Frequently Soliz and the Straight Time Workers worked for San Antonio Security well over 45 hours in a given week.

43.     Soliz's work schedule is typical of the Straight Time Workers.

44.     San Antonio Security was in control of the work schedules of Soliz and the Straight Time Workers.

45.     Soliz and the Straight Time Workers never received a salary for the work they performed for San Antonio Security.

46.     Soliz and the Straight Time Workers work(ed) for San Antonio Security under its straight time for overtime pay scheme.

47.     Soliz and the Straight Time Workers received straight time for overtime regardless of the number of hours or days they worked in a week, even if they worked more than 40 hours in a workweek.

48.     San Antonio Security classified Soliz and the Straight Time Workers as independent contractors.

49.     But San Antonio Security hired and treated Soliz and the Straight Time Workers just like regular, even if sometimes short-term, employees.

50.     In fact, Soliz and the Straight Time Workers were employees of San Antonio Security.

51.     The work assigned to and performed by Soliz and the Straight Time Workers was governed entirely by San Antonio Security.

52.     Soliz and the Straight Time Workers reported directly to San Antonio Security management-level employees.

53.     Soliz and the Straight Time Workers had to follow San Antonio Security's policies and procedures.

54.     Soliz and the Straight Time Workers had to wear uniforms dictated by San Antonio Security.

55.     Soliz and the Straight Time Workers were economically dependent on San Antonio Security and relied on San Antonio Security for work and compensation.

56.     San Antonio Security determined the amount and type of compensation paid to Soliz and the Straight Time Workers.

57.     Soliz and the Straight Time Workers worked in accordance with schedules determined by San Antonio Security.

58.     San Antonio Security controlled Soliz's and the Straight Time Workers' opportunities for profit and loss by dictating the days and hours they worked and the rates and method in which they were paid.

59.     San Antonio Security effectively prevented Soliz and the Straight Time Workers (or outright prohibited them) from working other jobs for other companies while they were working on jobs for San Antonio Security.

60.     San Antonio Security prohibited Soliz and the Straight Time Workers from subcontracting out the work they are assigned by San Antonio Security.

61.     While employed by San Antonio Security, Soliz and the Straight Time Workers did not market their services elsewhere.

62.     While employed by San Antonio Security, Soliz and the Straight Time Workers worked exclusively for San Antonio Security.

63.     Soliz and the Straight Time Workers did not substantially invest in the equipment or tools required to complete the overall job to which they were assigned. Instead, San Antonio Security provided Soliz and the Straight Time Workers with the equipment and facilities necessary for them to perform the work required of them.

64.     Soliz and the Straight Time Workers do not incur operating expenses like rent, payroll, and marketing.

65.     Rather, San Antonio Security made the large capital investments and supplied the business in which Soliz and the Straight Time Workers work.

66.     The work Soliz and the Straight Time Workers performed was an essential part of San Antonio Security's core businesses.

67.     Without the job performed by Soliz and the Straight Time Workers, San Antonio Security would not have been able to complete its business objectives.

68.     At all relevant times, San Antonio Security maintained control, oversight, and direction of Soliz and the Straight Time Workers, including, but not limited to, hiring, firing, disciplining, timekeeping, payroll, and other employment practices.

69.     San Antonio Security controlled Soliz's and the Straight Time Workers' pay.

70.     Likewise, San Antonio Security controlled Soliz's and the Straight Time Workers' work.

71.     Even though Soliz and the Straight Time Workers may have worked away from San Antonio Security's offices without the constant presence of San Antonio Security's supervisors, San Antonio Security still controlled significant aspects of their job activities by enforcing mandatory compliance with its policies and procedures.

72.     The daily and weekly activities of Soliz and the Straight Time Workers were routine and largely governed by standardized plans, procedures, and checklists created by San Antonio Security.

73.     Virtually every job function was predetermined by San Antonio Security, including the tools and equipment used, the schedule of work, and related work duties.

74.     Soliz and the Straight Time Workers performed routine job duties largely dictated by San Antonio Security.

75.     All of the Straight Time Workers performed similar job duties and were subjected to the same or similar policies and procedures which dictated the day-to-day activities they performed.

76.     All of the Straight Time Workers worked similar hours and were denied overtime as a result of the same illegal pay practice.

77.     All of the Straight Time Workers worked in excess of 40 hours each week and often worked more than 50 hours in a workweek.

78.     San Antonio Security uniformly denied Soliz and the Straight Time Workers overtime for the hours they worked in excess of 40 hours in a single workweek.

79.     The FLSA mandates that overtime be paid at one and one-half times an employee's regular rate of pay.

80.     San Antonio Security violated the FLSA because San Antonio Security, via its broadly applied and illegal straight time for overtime pay plan, denied Soliz and the Straight Time Workers of overtime pay for the hours they worked in excess of 40 in a single workweek.

81.     San Antonio Security knew Soliz and the Straight Time Workers worked more than 40 hours in a week.

82.     San Antonio Security knew, or showed reckless disregard for whether, Soliz and the Straight Time Workers were improperly classified as independent contractors (as opposed to employees).

83.     San Antonio Security knew, or showed reckless disregard for whether, Soliz and the Straight Time Workers were not exempt from the FLSA's overtime provisions.

84.     San Antonio Security knew, or showed reckless disregard for, whether the Straight Time Workers were entitled to overtime under the FLSA.

85.     San Antonio Security utilized a straight time for overtime pay plan despite clear and controlling law that states that Soliz and the Straight Time Workers were San Antonio Security's non-exempt employees, and not independent contractors.

86.     The decision by San Antonio Security to utilize its straight time for overtime pay plan was and is a willful violation of the FLSA and was not undertaken in good faith.

87.     Accordingly, San Antonio Security's pay policies and practices blatantly violated (and continue to violate) the FLSA.

## COVERAGE UNDER THE FLSA

88.     Plaintiffs incorporate all preceding paragraphs.

89.     At all times hereinafter mentioned, San Antonio Security was and is an employer within the meaning of the Section 3(d) of the FLSA, 29 U.S.C. § 203(d).

90.     At all times hereinafter mentioned, San Antonio Security was and is an enterprise within the meaning of Section 3(r) of the FLSA, 29 U.S.C. § 203(r).

91.     At all relevant times, San Antonio Security has been part of an enterprise engaged in commerce or in the production of goods for commerce within the meaning of section 3(s)(1) of the FLSA, 29 U.S.C. § 203(s)(1).

92.     At all relevant times, San Antonio Security has, and has had, employees engaged in commerce or in the production of goods for commerce, or employees handling, selling, or otherwise working on goods or materials that have been moved in or produced for commerce by any person, or in any closely related process or occupation directly essential to the production thereof.

93.     In each of the past 3 years, San Antonio Security's annual gross volume of sales has exceeded $1,000,000 for at least the past 3 years.

94.     During the respective periods of Soliz and the Straight Time Workers' employment by San Antonio Security, the Straight Time Workers provided services for San Antonio Security that involved interstate commerce for purposes of the FLSA.

95.     San Antonio Security uniformly applied its policy of improperly classifying the Straight Time Workers, including Soliz, as independent contractors.

96.     San Antonio Security uniformly applied its policy of paying its Straight Time Workers, including Soliz, straight time for overtime.

97.     San Antonio Security applied this policy regardless of any alleged individualized factors such as job position, job duties/responsibilities, or geographic location.

98.     San Antonio Security's practice of misclassifying its employees as independent contractors violates the FLSA.

99.     San Antonio Security's uniform compensation scheme paying straight time for overtime for weeks in which these workers work over 40 hours is, in of itself, a violation of the FLSA. 29 U.S.C. § 207(a) & (e).

100.    By improperly classifying the Straight Time Workers as independent contractors instead of employees, and by paying its workers straight time for overtime, San Antonio Security violated (and continues to violate) the FLSA's requirement that it pays its employees at 1 and ½ times their regular rates for hours worked in excess of 40 in a workweek.

101.    As a result of this policy, San Antonio Security and the Straight Time Workers did not and do not receive overtime payment as required by the FLSA.

102.    The proposed collective of similarly situated employees, i.e. putative collective members sought to receive FLSA notice pursuant to 29 U.S.C. § 216(b), is defined in herein.

103.    The precise size and identity of the proposed collective should be ascertainable from the business records, tax records, and/or employee or personnel records of San Antonio Security.

**CAUSE OF ACTION**
**FLSA VIOLATIONS**

104.    Soliz incorporates the preceding paragraphs by reference.

105.    At all relevant times, Soliz and the Straight Time Workers are (or were) individual employees who were engaged in commerce or in the production of goods for commerce as required by 29 U.S.C. §§ 206–07.

106.    San Antonio Security violated provisions of Sections 7 and 15 of the FLSA, 29 U.S.C. §§ 207, and 215(a)(2) by employing individuals in an enterprise engaged in commerce or in the production of goods for commerce within the meaning of the FLSA for workweeks longer than forty

(40) hours without compensating such employees for hours worked in excess of forty (40) hours per week at rates at least one and one-half times the regular rates.

107.     In violating the FLSA, San Antonio Security knowingly, willfully and in reckless disregard carried out its illegal pattern of failing to pay Soliz and other similarly situated employees overtime compensation. 29 U.S.C. § 255(a).

108.     Because San Antonio Security knew, or showed reckless disregard for whether, its pay practices violated the FLSA, San Antonio Security owes these wages for at least the past three years.

109.     San Antonio Security knew or should have known its pay practices were in violation of the FLSA.

110.     The decision and practice by San Antonio Security to not pay overtime was neither reasonable nor in good faith.

111.     Accordingly, Soliz and the Straight Time Workers are entitled to overtime wages for all hours worked in excess of forty (40) in a workweek pursuant to the FLSA in an amount equal to one-and-a-half times their regular rate of pay, plus liquidated damages, attorneys' fees, and costs.

## FLSA COLLECTIVE ACTION ALLEGATIONS

112.     All previous paragraphs are incorporated as though fully set forth herein.

113.     Pursuant to 29 U.S.C. § 216(b), this collective claim is made on behalf of all those who are (or were) similarly situated to Soliz.

114.     Other similarly situated employees have been victimized by San Antonio Security's patterns, practices, and policies, which are in willful violation of the FLSA.

115.     The parameters of the Straight Time Workers are defined herein.

116.     San Antonio Security's failure to pay any overtime compensation results from generally applicable policies and practices and does not depend on the personal circumstances of the individual Straight Time Workers.

117.    Thus, Soliz's experiences are typical of the experiences of the Straight Time Workers.

118.    The specific job titles or precise job requirements of the various Straight Time Workers does not prevent collective treatment.

119.    All of the Straight Time Workers—regardless of their specific job titles, precise job requirements, rates of pay, or job locations—are entitled to be properly compensated for all hours worked in excess of forty (40) hours per workweek.

120.    Although the issues of damages may be individual in character, there is no detraction from the common nucleus of liability facts.

121.    Indeed, the Straight Time Workers are non-exempt employees entitled to overtime after forty (40) hours in a week.

122.    San Antonio Security has employed a substantial number of similarly situated Security Guards within the three-year period preceding the filing of the instant lawsuit.

123.    Upon information and belief, these Straight Time Workers are geographically dispersed, residing and working in locations across the United States.

124.    Because the Straight Time Workers do not necessarily have fixed work locations, they may work in different states across the country in the course of a given year.

125.    Absent a collective action, many members of the proposed FLSA collective likely will not obtain redress of their injuries and San Antonio Security will retain the proceeds of its rampant violations.

126.    Moreover, individual litigation would be unduly burdensome to the judicial system.

127.    Concentrating the litigation in one forum will promote judicial economy and parity among the claims of the individual members of the classes and provide for judicial consistency.

128.    Accordingly, notice should be promptly sent to the members of the FLSA collective as defined as in Paragraph 18.

**JURY DEMAND**

129.    Soliz demands a trial by jury

**RELIEF SOUGHT**

130.    WHEREFORE, Soliz prays for judgment against San Antonio Security as follows:

a.    For an Order recognizing this proceeding as a collective action pursuant to Section 216(b) of the FLSA and requiring San Antonio Security to provide the names, addresses, e-mail addresses, telephone numbers, and social security numbers of all potential collective action members;

b.    For an Order approving the form and content of a notice to be sent to all potential FLSA Straight Time Workers advising them of the pendency of this litigation and of their rights with respect thereto;

c.    For an Order awarding Soliz (and those FLSA Straight Time Workers who have joined in the suit) back wages that have been improperly withheld;

d.    For an Order pursuant to Section 16(b) of the FLSA finding San Antonio Security liable for unpaid back wages due to Soliz (and those FLSA Straight Time Workers who have joined in the suit), for liquidated damages equal in amount to the unpaid compensation found due to Soliz (and those FLSA Straight Time Workers who have joined in the suit);

e.    For an Order awarding the costs and expenses of this action;

f.    For an Order awarding attorneys' fees;

g.    For an Order awarding pre-judgment and post-judgment interest at the highest rates allowed by law;

h.    For an Order awarding the Soliz a service award as permitted by law;

i.    For an Order granting such other and further relief as may be necessary and
appropriate.


Date: May 17, 2024.                    Respectfully submitted,

                                       */s/ Carl A. Fitz*
                                       **Carl A. Fitz**
                                       Texas Bar No. 24105863
                                       **FITZ LAW PLLC**
                                       3730 Kirby Drive, Ste. 1200
                                       Houston, Texas 77098
                                       (713) 766-4000
                                       carl@fitz.legal

                                       **ATTORNEY IN CHARGE FOR SOLIZ**